UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01549-TWP-DML |
| ) | |
| DILSHOD RASULOV, XPRESS TRUCKING ) | |
| LLC, PENSKE TRUCK LEASING CO., L.P., ) | |
| AMAZON.COM, INC., AMAZON LOGISTICS, ) | |
| INC, AMAZON FULLFILLMENT SERVICES, ) | |
| INC., XPO LOGISTICS, LLC, and COLUMBIA ) | |
| EXPRESS LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND
GRANTING THE AMAZON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Remand filed pursuant to 28 U.S.C. § 1447(c) by Plaintiff Kevin Richardson ("Richardson") (Filing No. 188), and a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Fulfillment Services, Inc. (collectively, "Amazon") (Filing No. 131). On October 21, 2020, Richardson filed a Third Amended Complaint against Defendants Amazon, XPO Logistics, LLC ("XPO"), Columbia Express LLC ("Columbia"), Xpress Trucking LLC ("Xpress"), Penske Truck Leasing Co., L.P. ("Penske"), and Dilshod Rasulov ("Rasulov") alleging negligence following a motor vehicle collision with Rasulov (Filing No. 124 at 10–11). For the following reasons, the Court **denies** Richardson's Motion to Remand and **grants** Amazon's Motion to Dismiss.

I. **BACKGROUND**

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all

inferences in favor of Richardson as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

On the night of October 10, 2017, or the early morning hours of October 11, 2017, Richardson and Defendant Rasulov were involved in a motor vehicle accident on Interstate 465 in Hamilton County, Indiana (Filing No. 124 at 3). Rasulov was operating his motor vehicle while in the course and scope of his employment and/or agency relationship with Xpress and/or Columbia. *Id*. at 4. The collision occurred after Rasulov pulled his trailer to the side of the highway due to a mechanical failure in a windshield wiper, but he did not place reflective triangles or any other emergency apparatuses out and did not turn on his hazard lights until after the crash. *Id*. at 3–4. At the time of the collision, the trailer Rasulov was operating was leased by Defendant Xpress from Defendant Penske. *Id*. at 4. Along with leasing it, Penske also inspected and maintained the trailer/truck. *Id*. Rasulov was transporting a shipment (the "load") from Amazon. *Id*. Amazon brokered the load to Defendant XPO, who subsequently sub-brokered it to Defendant Columbia. *Id*. Columbia, Rasulov, and/or Xpress then transported it. *Id.*

As a result of the collision, Richardson suffered from permanent physical injuries, mental anguish, loss of income, pain and suffering, and medical expenses. *Id*. at 5. He initiated this action in the Marion Superior Court on December 14, 2017, alleging negligence (Filing No. 188 at 1). XPO—a later-added Defendant—received service almost a year-and-a-half later, on or about April 2, 2019. *Id*. XPO subsequently filed a notice of removal and removed the case to federal court on April 19, 2019. *Id*. at 2. The notice stated that "[t]his [was] a civil action that falls within the Court's original jurisdiction under 28 U.S.C. §1332 and [was] one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §1441 *and* §1446." (Filing No. 1 at 3).

On February 23, 2021—roughly 676 days after XPO's removal of this case to federal court—Richardson filed a Motion to Remand to state court under 28 U.S.C. §1447(c) (Filing No. 188 at 2). According to Richardson, XPO's removal was barred "by the one (1) year rule of Section 1446(b) removal based on diversity jurisdiction." *Id*.

Earlier, on November 4, 2020, Amazon filed a Motion to Dismiss Richardson's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 131). Both Motions are ripe for the Court's consideration.

## II. DISCUSSION

Though Amazon's Motion to Dismiss chronologically preceded Richardson's Motion to Remand, the Court will first address whether this case should be remanded.

### A. Richardson's Motion to Remand

#### 1. Legal Standard

Pursuant to 28 U.S.C. § 1441, a defendant may remove any civil action from a state court to a federal district court if the district court would have original jurisdiction over that action. "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). When removal is premised upon the existence of diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" unless (1) the initial pleading seeks non-monetary relief or a monetary judgment for an unspecified amount, or (2) "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000.00]." 28 U.S.C. § 1446(c)(2); *see also Owens*, 574 U.S. at 87–88. So "[w]hen the complaint includes a number [for the amount of damages at issue], it controls unless recovering that amount would be legally impossible." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813,

3

815 (7th Cir. 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). But if the complaint omits a clause specifying the amount of damages at issue, "the size of the claim must be evaluated in some other way." *Rising-Moore*, 435 F.3d at 815.

As the proponent of federal jurisdiction, the removing party "bears the initial burden of establishing 'by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met.'" *Williams v. Wal-Mart Stores East LP*, No. 1:16-cv-02210-RLY-MPB, 2017 WL 6997731, at *2 (S.D. Ind. Nov. 22, 2017) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006)); *see also Sabrina Roppo v. Travelers Commerical Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (holding that the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold if the plaintiff challenges the defendant's amount in controversy allegation). Because courts "have acknowledged the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims," a removing party must only "establish the amount in controversy by a good faith estimate that is 'plausible and adequately [supported] by the evidence.'" *Sabrina Roppo*, 869 F.3d at 579 (quoting *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)). "If the removing party is able to meet this burden, then remand is appropriate only if the plaintiff can establish the claim is for less than the requisite amount to a 'legal certainty.'" *Id.* (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)); *see also Oshana*, 472 F.3d at 511.

### 2. **Analysis**

Richardson argues that remand is warranted because removal was tardy. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). While defendants generally have thirty days after they

are served to remove a case from state to federal court if the plaintiff could have originally brought the action in the latter tribunal, 28 U.S.C. § 1446(b)(2)(B), when cases are not removable at the time they are filed, defendants—no matter when they enter the litigation—are foreclosed from removing cases "more than 1 year after commencement of the action," 28 U.S.C. § 1446(c)(1). In other words, after a year passes in a state court case that was non-removable at the time it was filed, no defendant can remove it to federal court, even if they are added following that period. Richardson contends that his case was not removable at the time he commenced it because "the Complaint did not unambiguously and affirmatively state that the amount-in-controversy was more than $75,000.00." (Filing No. 188 at 4.) So, because XPO removed the case over a year after it was filed, Richardson argues this Court must remand his case back to the "Marion County Superior Court." Id. at 6-7.[1]

XPO responds that although Richardson's Complaint did not—as required by Indiana Rule of Trial Procedure 8(A)(2)—demand a specific sum of money, the case was removable upon commencement (Filing No. 189 at 2).[2] XPO maintains that under Richardson's "interpretation of the prerequisites for a pleading to be removable on its face (a prayer for relief in excess of $75,000), no Complaint, filed in state court, which complied with Indiana Rule of Trial Procedure 8(A)(2) could ever establish original jurisdiction under 28 U.S.C. §1332." Id. at 6. Instead, XPO argues, nothing requires a complaint to specifically allege damages over $75,000.00, and Richardson's original Complaint pleads myriad harm that "[c]learly" shows he seeks damages exceeding that

---

[1] The parties also extensively argue over whether the "one-year bar" of 28 U.S.C. § 1446(c)(1) is jurisdictional or procedural (see Filing No. 188 at 5–6; Filing No. 189 at 2, 8–10; Filing No. 194 at 2–6; Filing No. 197 at 8–14). But because the Court finds that this limitation does not apply, it need not summarize, discuss, or resolve that issue.

[2] Rasulov and Xpress (Filing No. 190), Penske (Filing No. 193), and Columbia (Filing No. 195) all expressly joined XPO's response brief. Amazon filed its own response examining the jurisdictional/procedural issue described *supra* note 1 (Filing No. 194), with Penske also explicitly joining that brief (Filing No. 196).

amount. *Id.* at 7–8. Indeed, XPO's Notice of Removal, under a heading titled "Diversity Jurisdiction Exists," specifically stated that

> the monetary value of the amount in controversy exceeds $75,000, exclusive of interest and costs, based upon the following:
>
> a. Plaintiff contends he sustained injuries as an alleged result of the accident forming the basis of their Complaint.
>
> b. Plaintiff alleges said injuries are severe and permanent.
>
> c. Plaintiff's counsel has communicated his belief that the potential recovery of this matter is in excess of $75,000 exclusive of interest and costs.

([Filing No. 1 at 3](), 4.)

XPO points out that the version of Richardson's complaint it was served stated that Richardson "sustained catastrophic personal injuries resulting in pain and suffering," "has been required to engage the services of hospitals, physicians, surgeons, and physical/occupational therapists for medical care and treatment, multiple surgeries, medication, X-rays, and MRI's among other things for which he has incurred reasonable medical expenses." ([Filing No. 189 at 7]()–8 (quoting [Filing No. 188-1 at 4]()).) The complaint further stated that Richardson "may require additional medical care and treatment in the future, for which he will incur additional medical expenses," "was forced to miss work as a result of the collision and may miss additional work in the future resulting in additional lost wages," and his "earning capacity has been permanently impaired." *Id*. XPO argues this harm is reminiscent of that in a case where—despite a plaintiff explicitly alleging damages of only "$50,000"—the Seventh Circuit held that it was "clear that she [was] seeking damages in excess of $75,000" when "the litany of injuries" she claimed to have sustained included "future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and

related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences". *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Richardson attempts to distinguish his action from *Walton*, arguing that here, "no specific injuries were alleged, no amount of damages were alleged (minimum or otherwise), and it involved a motor vehicle collision versus a costly medical drug defect case." (Filing No. 197 at 7.) The Court notes that nothing in *Walton* instructs that it only applies in cases where a specific damage amount is alleged; instead, it merely acknowledged that "the litany of injuries [a plaintiff] claims to have sustained . . . [can make it] clear that [he] is seeking damages in excess of $75,000." 643 F.3d at 998. If anything, alleged open-ended damages, like here, may be an even easier call for courts to establish as meeting amount-in-controversy demands. As for the distinction based on case type ("a motor vehicle collision versus a costly medical drug defect case"), the Court cannot discern how that difference matters because Richardson fails to explain the point. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (quotation omitted).

In support of his argument that the case was not initially removable, Richardson points the Court instead to *Walker v. Trailer Transit, Inc.* (Filing No. 197 at 6 (citing 727 F.3d 819 (7th Cir. 2013).) Richardson contends that the *Walker* court "made clear" that "the 30-day removal clock is triggered *only* by the defendant's receipt of a pleading or other litigation paper facially revealing that the grounds for removal are present." *Id.* (citing 727 F.3d at 823–24). Because "Richardson's complaint cited no specific injuries and no specific amount-in-controversy," the removal clock was never triggered, and so "the case was not initially removable." *Id.* at 5, 8. Moreover, the *Walker* court, Richardson contends, established this "bright-line rule even though Plaintiffs are

7

restricted in all three states within the Circuit from quantifying the amount of damages sought in a Complaint". *Id.* at 6–7 (citing 727 F.3d at 824).

This Court is not persuaded, disagrees with Richardson's interpretation of *Walker*. Although the "[t]he 30-day removal clock does not begin to run until the defendant receives a … pleading or other paper [that] specifically disclose[s] the amount of monetary damages sought," the *Walker* court acknowledged that "[w]hether the jurisdiction prerequisites [for removal] are in fact met *is a separate determination* and often involves consideration of materials outside the state-court pleadings." *Walker*, 727 F.3d at 824 (emphasis added). In other words, "[t]he moment a case becomes removable and the moment the 30–day removal clock begins to run are not two sides of the same coin." 727 F.3d 819, 824 (quotation omitted). Just as in *Walker*, Richardson's "proposed rule conflates the timeliness question with the factual inquiry into whether the case is substantively appropriate for removal," *id.*, and, in fact, would foreclose any case filed pursuant to Indiana Rule of Trial Procedure 8(A)(2) from being considered removable upon commencement.

As discussed above, this case was "substantively appropriate for removal" at the time it was commenced because XPO, as the removing party, has established by a preponderance of the evidence that the amount-in-controversy exceeded $75,000.00 by pointing to the considerable harm alleged in the original complaint. *Cf. Walton*, 643 F.3d at 998. The Court, accordingly, **denies** Richardson's Motion to Remand ([Filing No. 188](#)).

B. **Amazon's Motion to Dismiss**

    1. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

Courts, however, "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**2.     Analysis**

In his Third Amended Complaint, Richardson alleges "[a]s a direct and proximate cause of the negligence of the Amazon Defendants, Plaintiff suffers from permanent physical injuries, mental anguish, pain and suffering in the past, loss of income, present, and in the future, past medical expenses and future medical expenses." (Filing No. 124 at 11.) To state a claim for negligence under Indiana common law, a plaintiff must plead "(1) a duty owed by the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty."

*Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (citing *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). At the outset, Amazon contends that Richardson's allegations are "insufficient to allege a valid duty under Indiana law." ([Filing No. 132 at 4](#).)

The existence of duty is a question of law; absent it, "there can be no negligence or liability based upon the breach." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386–87 (Ind. 2016) (citing *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004). To determine whether a duty exists, Indiana courts employ a three-part balancing test examining "(1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns." *Id.* at 387 (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995–97 (Ind. 1991). The balancing test, however, should only be used "in those instances where the element of duty has not been declared or otherwise articulated." *Id.*

Richardson maintains that "Indiana case law already supports a finding that a duty owed by Amazon to [him] exists". ([Filing No. 148 at 5](#).) In other words, Richardson ostensibly contends that there is no need to delve into the balancing test because a duty has already been declared or articulated. He relies on *Detrick v. Midwest Pipe & Steel*, where the Indiana Court of Appeals held that "[a]lthough generally a principal is not liable for the torts of an independent contractor, a principal may be liable for the torts of a hired independent contractor if the consequences of the negligent failure to select a competent contractor cause the harm upon which a suit is based." 598 N.E.2d 1074, 1081 (1992). Amazon replies that *Detrick* and additional cases—*Bagley v. Insight Communication Co., L.P.*, 658 N.E.2d 584 (Ind. 1995) and *Wabash County v. Pearson*, 120 Ind. 426 (1889)—require otherwise. These cases provide that "negligent selection or retention of a contractor" claims to include allegations of "1) an independent contractor relationship; 2) an alleged incompetence of that contractor that is the proximate cause of the harm suffered; 3) that

10

the principal had knowledge of the incompetence; and 4) one of the exceptions to the general rule that a principal is not liable for the acts or omissions of that independent contractor." (Filing No. 155 at 5.) By failing to establish these "essential elements," Amazon argues, "the Third Amended Complaint fails to plead any claim for negligent selection of contractor." *Id.*

The Court agrees with Amazon: because Richardson has failed to plead any of the essential elements of a negligent selection or retention of a contractor claim (including, perhaps most importantly, *who* Amazon negligently selected or retained), he cannot contend that this already-articulated duty exists. Because no established duty has been pled, the Court must turn to the application of Indiana's three-part balancing test to determine whether Richardson has alleged a valid duty owed to him by Amazon. *See Goodwin*, 62 N.E.3d at 387. The Court will address these three factors in turn: (a) relationship between the parties, (b) foreseeability, and (c) public policy concerns.

### a. Relationship between the parties

Amazon contends that Richardson "does not plead any relationship between himself and Amazon in his Third Amended Complaint." (Filing No. 132 at 5.) Amazon notes that Richardson alleges that "Amazon … brokered a shipment to XPO, and that XPO brokered that load to Columbia, which then brokered that load to Xpress, the entity that employed Rasulov." *Id*. Amazon notes that "[it] is not alleged to have owned or maintained the semi-tractor at issue, and is not alleged to have selected, employed, or trained Rasulov." *Id*. According to Amazon, this factor "weighs in favor of finding the absence of a duty owed by [it] to Richardson for the alleged actions of Rasulov and any other defendants." *Id*.

Richardson responds that the relationship is "clear" because "at the time of the [c]ollision[,] Rasulov was acting as an employee and/or agent of Xpress and Columbia, that

11

Rasulov was acting in the course of said employment, and that Rasulov was transporting a load of Amazon contracted from Amazon to XPO to Columbia at the time of the [c]ollision." (Filing No. 148 at 6–7.) Amazon replies that "the question is whether the particular relationship is one which suggests a duty exists, not merely connecting dots between a chain of entities/persons." (Filing No. 155 at 7 (citing *Webb*, 575 N.E.2d at 995)). According to Amazon, the relationship that Richardson identified was "nothing more than a chain of contracts and ultimately an accident involving Rasulov and [Richardson]". *Id*.

The Court finds that the Third Amended Complaint did not plead a relationship between Rasulov and Amazon that suggests a duty exists. Although Richardson argues the relationship between the two parties was obvious, (*see* Filing No. 148 at 6), this relationship, as Amazon notes, instead represents "a chain of contracts" with numerous interconnected links between Amazon and Rasulov. (Filing No. 155 at 8.) Indeed, Richardson's explanation of the connection between the defendants—that "at the time of the [c]ollision[,] Rasulov was acting as an employee and/or agent of Xpress and Columbia, that Rasulov was acting in the course of said employment, and that Rasulov was transporting a load of Amazon contracted from Amazon to XPO to Columbia at the time of the collision" (Filing No. 148 at 6–7)— demonstrates that this is anything but a "clear" relationship. The Court finds that the party relationship prong weighs in Amazon's favor.

      **b.**    **Foreseeability**

Amazon contends that "[t]he reasonable foreseeability factor also favors dismissal" because "[n]one of Richardson's allegations allege that the accident was foreseeable, or well pleaded facts supporting foreseeability." (Filing No. 132 at 6.) Indeed, Amazon argues that "[it was] not alleged to have known about any mechanical issue on the semi-tractor; that the issue would cause Rasulov to pull over; that Rasulov would act in any particular way; or that Richardson

would collide into the back of Rasulov's parked vehicle." *Id*. Amazon contends "[c]ontracting an entity to transport and/or broker a shipment does not make it reasonably foreseeable that an accident would happen." *Id*.

Richardson responds that "Amazon incorrectly cites to the test of reasonable foreseeability as it relates to proximate causation, not to the existence of a duty." (Filing No. 148 at 7 (emphasis omitted).) According to Richardson, "[f]or the purposes of determining whether an act is foreseeable in the context of duty, the court must assess whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it;" which is "a more general analysis." *Id*. (citing *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 42 (Ind. Ct. App. 2019)). He argues that this prong weighs in his favor because,

> it is reasonably foreseeable that if a truck is not properly maintained or inspected, is pulled to the side of the road in the dark in heavy rain without proper hazard warnings such as reflective triangles and/or lighting on the trailer, and proper safety procedures and precautions are not taken, an injury to another driver on the interstate could easily occur.

*Id*. at 7.

Amazon replies that no reasonable foreseeability exists because it is neither alleged "that Amazon had any knowledge that the tractor-trailer was not inspected, let alone that it had a mechanical [mal]function" nor that it "knew of any issue with Rasulov's training, let alone that Rasulov would allegedly ignore a commercial motor vehicle regulation at the specific time and place of the incident." (Filing No. 155 at 8.)

The Court finds that the factor concerning the foreseeability of the harm weighs against a finding that Amazon owed a duty to Richardson. As both parties acknowledge, the court must assess "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid" it. (Filing No. 148 at 7 (citing *Buddy & Pals III*,

13

118 N.E.3d at 42); (Filing No. 155 at 8 (citing *Goodwin*, 62 N.E.3d at 391)). While Richardson credibly argues that it is reasonably foreseeable that inadequate maintenance and improper safety protocols involving trailers/trucks could lead to "injury to another driver" (Filing No. 148 at 7), he has failed to indicate how it is Amazon's burden to ensure that these procedures are followed. And, in fact, his Third Amended Complaint specifically alleges in its "Facts" section that the truck was "inspected by[ ] and maintained by Penske." (Filing No. 124 at 4.) Because Richardson did not plead "that Amazon owned, leased, or maintained the tractor-trailer or that it selected Xpress or hired or trained Rasulov" (Filing No. 155 at 8), the Court finds that the foreseeability prong weighs in Amazon's favor.

        **c.**    **Public policy concerns**

Amazon argues that "public policy strongly favors dismissal" because "[t]he ability for a shipper to contract with commercial motor vehicle carriers, and for those carriers to deliver and/or broker loads to ensure efficient delivery of goods, serves a crucial economic purpose". (Filing No. 132 at 6.) According to Amazon, this "alone is sufficient to find that public policy concerns weigh against imposing a duty on a shipper to ensure the actions and equipment of an employee of a sub-contractor, of a sub-contractor of the shipper's independent contractor." *Id*. This, says Amazon, could lead to "'dire consequences'":

> "An individual person, when sending a package through a private carrier, presumably enters into an implicit contract with that party for the carriage of goods. If each individual sender held a duty to the public at large to ensure that the carrier's individual contractors abided by all pertinent regulations, then any individual harmed by a negligent UPS or FedEx driver would have a claim against any person whose package was carried by any particular truck."

*Id.* (quoting *Hoffee v. AAC Transportation LLC*, No. 1:18-CV-01908, 2019 WL 2642840, at *3 (M.D. Pa. June 27, 2019)). "The Indiana Supreme Court," Amazon concludes, would not "impose

a duty upon Amazon to ensure that Rasulov knew and complied with CFR requirements given the relationship, or lack of relationship, between [it] and Rasulov." *Id*. at 7-8.

Richardson responds that "[w]hile efficient delivery of goods is important, the health and safety of individuals outweighs that concern." (Filing No. 148 at 8.) Richardson argues that *Hoffee* is not controlling because "[t]his case is not based on Indiana's laws," and "this case does not involve an *individual* shipper using a private shipper." *Id*. at 9 (emphasis added). He thus concludes that this third factor "weighs in favor of finding a duty owed by Amazon to Richardson" because "companies that knowingly enter into contracts with another shipping company should have a duty to ascertain that all safety protocols and precautions are being followed. Otherwise, nothing prevents large companies from sub-contracting away all liability and placing the burden on smaller companies." *Id*. at 9–10.

Amazon replies that Richardson's "argument for the creation of a duty for all shippers 'to have a duty to ascertain that all safety protocols and precautions are being followed[ ]' is radical." (Filing No. 155 at 9 (quoting Filing No. 148 at 9) (emphasis omitted).) This policy "would not only significantly hamper a person's ability to contract, it would result in the 'logical extreme' that the *Hoffee* court recognized." *Id.*

The Court finds that public policy concerns weigh against finding that Amazon owed a duty to Richardson. While the Court agrees, of course, that individuals on the roadway should be protected from the negligent acts of others, public policy dictates that no duty should be owed by Amazon when it "brokered the Load to XPO and XPO sub-brokered the Load to Columbia. Columbia, [Rasulov], and/or Xpress then transported the Load." (Filing No. 124 at 4.) This lengthy chain is much too tenuous to impose a duty on public policy grounds. Like the *Hoffee* court persuasively explained, doing so would mean that "any individual harmed by a negligent

15

UPS or FedEx driver would have a claim against any person whose package was carried by any particular truck." 2019 WL 2642840, at *3. It cannot be the public policy that "every crash involving a private carrier could have hundreds of defendants." *Id.* The Court finds that the public policy prong weighs in Amazon's favor.

The Court agrees with Amazon that Richardson's application of the negligence duty balancing test "misses the mark." (Filing No. 155 at 7.) Because the factors weigh entirely in Amazon's favor, Richardson's Third Amended Complaint has failed to include "enough facts to state a claim to relief that is plausible on its face" against Amazon for negligence. *Hecker*, 556 F.3d at 580. Accordingly, the Court **grants** Amazon's Motion to Dismiss (Filing No. 131).[3]

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Richardson's Motion to Remand (Filing No. 188) and **GRANTS** Amazon's Motion to Dismiss (Filing No. 131). Richardson's claim against Amazon for negligence is **dismissed with prejudice**.[4] The **Clerk is directed** to terminate Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Fulfillment Services, Inc. as defendants in this action. No final judgment will issue at this time. The Stay issued in Filing No. 201 is **lifted**. Richardson and the remaining Defendants have **fourteen (14) days from the date of this Order** to file joint or alternative case management orders; and they should contact the Magistrate Judge to schedule a status conference.

**SO ORDERED.**
Date:  4/15/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[3] Because the claim against Amazon is resolved on duty grounds, the Court need not resolve whether Richardson's "Third Amended Complaint pleads no facts to support a negligence claim." (Filing No. 132 at 7.)

[4] Amazon persuasively argues that because Richardson, before filing the operative complaint, was "well aware" that Amazon "denied any employment/agency/contractor relationship with Xpress and Rasulov," he should not receive leave to amend his *Third* Amended Complaint (*see* Filing No. 155 at 11). *See Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 927 (7th Cir. 1990) ("Whether to grant or deny leave to amend is within the district court's discretion.").

DISTRIBUTION:

Ann Marie Waldron
WALDRON TATE BOWEN FUNK SPANDAU LLC
annmarie@wtbfs-law.com

Benjamin Albert Spandau
WALDRON TATE BOWEN FUNK SPANDAU LLC
ben@tatebowen.com

Brandon Eric Tate
WALDRON TATE BOWEN FUNK SPANDAU LLC
brandon@wtbfs-law.com

John Thomas Funk
WALDRON TATE BOWEN FUNK SPANDAU LLC
jt@tatebowen.com

Kevin Michael Bowen
WALDRON TATE BOWEN FUNK SPANDAU LLC
kevin@WTBFS-Law.com

James L. Fischer, Jr.
WATERS, TYLER, HOFMAN & SCOTT, LLC
jfischer@wthslaw.com

Scott Lee Tyler
WATERS TYLER SCOTT HOFMANN & DOANE LLC
styler@wthslaw.com

Bryce H. Bennett, Jr.
RILEY BENNETT EGLOFF LLP
bbennett@rbelaw.com

Drake Thomas Land
RILEY BENNETT EGLOFF LLP
dland@rbelaw.com

Edward A. DeVries
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP (Chicago)
edward.devries@wilsonelser.com

James Russell Williams
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP (Chicago)
jim.williams@wilsonelser.com

Robert R. Foos
LEWIS WAGNER, LLP
rfoos@lewiswagner.com

Joseph K. Guyette
HEYL ROYSTER COELKER & ALLEN
jguyette@heylroyster.com

Matthew S. Hefflefinger
HEYL ROYSTER VOELKER & ALLEN
mhefflefinger@heylroyster.com